**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Phattakhone P.,

Petitioner,

v.

Markwayne Mullin, et al.,

Respondents.

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Civil File No. 26-02948 (MJD/ECW)

---

Daniel P. Suitor, Daniel P. Suitor, PLLC, Counsel for Petitioner.

David R. Hackworthy, Assistant United States Attorney, Counsel for Respondents.

---

## I. INTRODUCTION

This matter is before the Court on Petitioner Phattakhone P.'s petition for writ of habeas corpus filed June 13, 2026. (Doc. 1.) Petitioner asserts that he is being held in detention in violation of constitutional and statutory law. Petitioner seeks a writ of habeas corpus requiring, among other things, that Respondents immediately release him from custody into Minnesota.

## II. FACTS

Petitioner came to the United States in 1984 at the age of two as a refugee from Laos. (Id. ¶ 12.) Petitioner's family fled from Laos because they were targeted for reprisal and oppression by the government of Laos for their support

for American troops during the Vietnam War and the Secret War in Laos during the same period. (Id.) Petitioner became a lawful permanent resident, retroactive to his date of entry. (Id.)

Petitioner was ordered removed in 2022 following a series of criminal convictions. (Id. ¶ 13.) In 2017, Petitioner was convicted of felony first degree damage to property. (Id. ¶ 14.) In 2019, Petitioner was convicted of misdemeanor counts of 4th degree assaults of a peace officer, marijuana theft, and disorderly conduct. (Id.) In 2021, he was convicted of felony first degree arson. (Id.)

On April 12, 2022, Petitioner was ordered removed by an Immigration Judge. (Id. ¶ 15.) On October 16, 2023, ICE issued Petitioner a Warrant of Removal/Deportation (referred to as an "I-205"). (Doc. 6.) However, Petitioner could not be removed within 90 days as required by law because Laos would not accept him. (Doc. 1 ¶ 16.) Therefore, on January 11, 2024, Petitioner was released on an Order of Supervision. (Id.; Doc. 6; Doc. 6-9.) As part of his Order of Supervision, Petitioner was required to not commit any crimes. (Doc. 6-9.) The Order of Supervision also noted that "[a]ny violation of these conditions may result in you being taken into Service custody." (Id.)

Since being released on his Order of Supervision, Petitioner has faced some additional criminal charges. In 2025, Petitioner was convicted of a misdemeanor

4th degree damage to property. (Doc. 1 ¶ 14.) On May 28, 2026, Petitioner was arrested and charged with gross misdemeanor domestic assault. (Id.) On May 29, 2026 around 1:00 p.m., Petitioner was released on his own recognizance.[1] (Id. ¶ 20.) When he came out to the lobby of the jail, ICE agents were waiting for him, and he was immediately detained and taken to the Bishop Henry Whipple Federal Building for processing. (Id.)

Respondents indicate that Petitioner was arrested pursuant to an I-205, Warrant of Removal. (Doc. 5 at 13.) However, Petitioner points out – and Respondents own exhibits confirm – that he was detained pursuant to an I-200, Warrant for the Arrest of Alien. (Doc. 7 at 10; Doc. 6 at 2 ("On May 29, 2026, ICE/ERO…issued a Warrant for Arrest of Alien (Form I-200) . . . Petitioner was served with Form I-200 and taken into ICE custody.").)

Further, there are some factual disputes presented by each Party as to the notice provided to Petitioner on the revocation of supervised release. Respondents indicate that on May 29, 2026, Respondents served Petitioner with a "Notice of Revocation of Release," indicating that he had violated his 2024 Order

---

[1] Petitioner argues the Respondents detained him around 1:00 p.m. on May 29, 2026. (Doc. 1 ¶ 20.) Respondents' exhibit indicates that Petitioner was detained at 5:15 p.m. on May 29, 2026. (Doc. 6-6 at 1.) As explained below, the Court does not find the factual distinction material to its analysis.

of Supervised Release and that his release was revoked, and then ICE agents conducted an informal interview of Petitioner to which he declined to respond to questioning. (Doc. 6 at 3.) Petitioner maintains that Respondents detained him and then served the Notice of Revocation of Release, pointing to the electronic signature on the document (listed as signed at 10:30 p.m. on May 29, 2026), as well the date included in the proof of service (listed as May 30, 2026). (See Doc. 6-7.) The Court analyzes these issues below.

Petitioner is currently in custody at the Sherburne County Jail in Elk River, Minnesota. (Doc. 1 ¶ 7.)

On June 13, 2026, Petitioner filed this petition for habeas corpus. (Doc. 1) On June 15, 2026, the Court ordered Respondents to respond to Petitioner's petition by June 22, 2026 and to file "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised in the habeas petition." (Doc. 3 ¶ 2.) On June 22, 2026, Respondents filed their response and accompanying exhibits. (See Doc. 5.) Included in Respondents' submission was an affidavit, a 2020 and a 2021 Notice to Appear, Petitioner's 2022 final removal order, a 2023 Warrant of Removal (Form I-205), Petitioner's Record of Deportable/Inadmissible Alien (Form I-831), Petitioner's Notice of Revocation of Release and accompanying certification of an

initial informal interview, Petitioner's original 2023 Order of Supervision, and a 2026 Warrant for Arrest of Alien (Form I-200). (See Docs. 6, 6-1, 6-3, 6-4, 6-5, 6-6, 6-7, 6-8, 6-9.) Petitioner filed his reply on June 26, 2026. (Doc. 7.)

## III. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (holding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States"). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to noncitizens outside of our geographic borders. But once a noncitizen enters the country, the legal situation changes, "for the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Id. at 693. Petitioner bears the burden to prove

detention contrary to law by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Petition Verification**

Respondents begin their response by arguing that the Court should outright dismiss Petitioner's petition because it is lacking proper verification. (Doc. 4 at 3–6.) Respondents specifically argue that Petitioner's counsel, who personally swore to the accuracy of the habeas petition, failed to properly verify the petition because he did not include "a reason why Petitioner was unable to review and verify the Petition, or what efforts Petitioner's Counsel made to ensure his client reviewed and verified the Petition." (Doc. 5 at 4–6.)

A petition for writ of habeas corpus must "be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. 2242. Yet, the Court is persuaded by reasoning laid out in Vu V.L. v. Mullin:

> A person acting on behalf of a habeas petition might sign and verify the petition because of the petitioner's "inaccessibility, mental incompetence, or other disability." One early American court explained that it was a "frequent practice" to present habeas petitions "in deportation cases signed and verified by others than the person detained" because "often for lack of time, . . . it [is] impossible to present a petition signed and verified by the person detained." That concern rings true nearly 120 years later. As courts in this District have observed over the last several months, ICE has been less than diligent in communicating with detainees and their counsel

> regarding a detainee's circumstances of detention and has "transferred detainees frequently, quickly, without notice, and often with no way for attorneys to know where or for how long their clients will be at a given facility." These circumstances—notably, created by the Government—no doubt present the sort of "inaccessibility" and "lack of time" that justifies an attorney to act on a petitioner's behalf in signing and verifying a habeas petition.

No. 26-CV-2947 (LMP/JFD), slip op. at 6–7 (D. Minn. July 1, 2026) (citations omitted). Therefore, the Court will consider Petitioner's habeas petition as properly verified.

**C. Revocations of Supervision Under 8 C.F.R. § 241.13**

Petitioner argues, in part, that his detention is unlawful and that he should be released because he was not served notice that his Order of Supervision had been revoked until after he was detained. (Doc. 7 at 22–25.) Respondents pointed out the fact that Petitioner did not abide by his release conditions (i.e., he was arrested), and that they are "not required to justify their act of detaining Petitioner based on the standards of § 241.13(i)(2)." (Doc. 5 at 6–7.)

Respondents appear to completely overlook the federal regulations ICE must follow to revoke an Order of Supervision. Once ICE determines that removal is not likely in the reasonably foreseeable future and releases a noncitizen on an Order of Supervision, ICE's ability to re-detain someone is controlled by federal regulations. An Order of Supervision under 8 C.F.R. §

241.13 can be revoked, and a noncitizen can be re-detained, under two circumstances: 1) the noncitizen violated any of the conditions of his release, or 2) the government identifies "changed circumstances" that indicate a "significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). But in both cases, if release is revoked, the government must notify the noncitizen of the reasons for revocation. § 241.13(i)(3). "The government's failure to follow the regulations set forth in § 241.13 indicates an unlawful detention." Vang v. Bondi, No. 0:26-CV-1381, 2026 WL 458195, at *2 (D. Minn. Feb. 18, 2026) (citations omitted).

The Court finds that the Notice of Revocation in this case is inadequate. As Petitioner observes, and Respondents own exhibits confirm, the Notice of Revocation bears an electronic signature showing that it was not signed until 10:30 p.m. on May 29, 2026, even though Petitioner had been in custody since that afternoon.[2] (Doc. 7 at 24; Doc. 6-6.) Further still, the same exhibit confirms that Petitioner was not personally served with the Notice of Revocation until

---

[2] As described in the facts, Petitioner and Respondents disagree specifically when Petitioner was first in ICE custody. Petitioner argues the Respondents detained him around 1:00 p.m. on May 29, 2026. (Doc. 1 ¶ 20.) Respondents' exhibit indicates that Petitioner was detained at 5:15 p.m. on May 29, 2026. (Doc. 6-6 at 1.) The Notice of Revocation was not prepared until 10:30 p.m., however, so the distinction here is irrelevant to the Court's analysis.

May 30, 2026, one day after he was taken into ICE custody. (See Doc. 6-7.) This provided Petitioner with no notice that his supervised release was revoked and runs contrary to the federal regulations governing revocation procedures.

The Court also cautions Respondents against treating the notice requirement for revocations of supervised release as a mere technicality. As the Court in Pedro O. v. Noem explained, 8 C.F.R. § 241.13(i)(3) was promulgated "to provide noncitizens with the fundamental due process protections that courts have found to be constitutionally required." No. 26-cv-361 (ECT/LIB), 2026 WL 608314, at *3 (D. Minn. Feb. 27, 2026) (citation omitted), R&R adopted, 2026 WL 615415 (D. Minn. Mar. 4, 2026). The notice requirement, therefore, is not simply a formality; it is an important mechanism by which an individual learns that his freedom is at risk and can prepare to challenge such determination. Even where, like here, revocation of an Order of Supervision may be appropriate, the Court will not so quickly disregard the notice protections afforded to Petitioner.

Because the purported "Notice of Revocation" is so clearly deficient, the Court finds that ICE failed to adequately follow its own regulations and determines that Petitioner's current detention is unlawful. See Vang, 2026 WL 458195, at *2. Release is then the appropriate remedy.

The Court acknowledges that the parties here spend considerable briefing on Petitioner's constitutional and statutory claims. (See Doc. 1 ¶¶ 80–94; Doc. 5 at 7–17.) However, because the Court grants relief on Petitioner's regulatory claim, it need not reach the alternative arguments. See Faysal N. v. Noem, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026) (stating that when the court's decision on one of the petitioner's asserted theories for relief meant that the petitioner's detention was unlawful, the court did not need to reach the petitioner's alternative arguments).

## IV. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED as follows:**

1. Respondents are ordered to immediately release Petitioner into Minnesota;

2. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

3. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, passport, cell phone, keys, etc.;

4. Respondents are enjoined from imposing any conditions on Petitioner's release other than the conditions in his preexisting Order of Supervision; and

5. Respondents are ordered to confirm with the Court Petitioner's release from custody within forty-eight (48) hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 2, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court